[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16443
Non-Argument Calendar

_____

BIA No. A96-011-412

DENISE MITCHELL,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 11, 2007)**

Before BIRCH, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Denise Mitchell petitions this court for review of a final order of the Board

of Immigration Appeals ("BIA"), which affirmed, without opinion, a decision of the Immigration Judge ("IJ") denying Mitchell's claim for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment of Punishment ("CAT"). For the reasons that follow, we affirm.

## I. BACKGROUND

Mitchell, a native and citizen of Jamaica, arrived in the U.S. in 1999. On or about May 14, 2001, Mitchell applied for a U.S. passport using a false birth certificate showing her to be a U.S. citizen. While processing Mitchell's passport application, immigration authorities determined that the birth certificate she had submitted was fraudulent. As a result, Mitchell was indicted for making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542. On January 21, 2003, Mitchell was convicted of this charge and ultimately sentenced to two months' imprisonment and three years' probation.

On March 25, 2003, the Department of Homeland Security ("DHS") issued Mitchell a Notice to Appear, charging her with being an alien present in the U.S. without having been admitted or paroled into the U.S., in violation of INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and being an alien who has falsely represented herself to be a U.S. citizen for a purpose or benefit under the INA or any other federal or state law, in violation of INA § 212(a)(6)(C)(ii), 8 U.S.C. § 1182(a)(6)(C)(ii). On November 5, 2003, Mitchell appeared before an IJ,

2

admitted the factual allegations in the Notice to Appear, and designated Jamaica as the country for removal.

In December 2003, Mitchell filed an application for relief under the CAT, alleging that as a returning deportee in Jamaica, she would be subject to torture by agencies of the Jamaican government, including the police and security forces. She asserted that she "would be held indefinitely and interrogated" and that she had "friends who have experienced this mistreatment." In support of her application, Mitchell submitted the U.S. Department of State's Country Report on Jamaica ("Country Report"), which referenced reports of prisoners and detainees being abused and murdered by police and prison guards. The Country Report also stated that although inmates in Jamaica's women's prison, Fort Augusta, had complained of being beaten by guards, the women's prison was considered safer and less violent than Jamaica's men's prisons.

At a January 2005 merits hearing before the IJ, Mitchell testified as follows: Mitchell claimed to have "first hand" knowledge "of people" who had been sexually assaulted and beaten by government security forces after being deported to Jamaica. Her friend, Sophia Barnes, had been deported from the U.S. to Jamaica in 2004. Shortly after Barnes arrived in Jamaica, Barnes's mother informed Mitchell in a series of telephone calls that Barnes had been detained at the Fort Augusta Women's Prison. Barnes's mother also told Mitchell that Barnes had

3

been sexually assaulted and raped by prison guards during her detention.

Upon Barnes's release from approximately two months of detention, Barnes telephoned Mitchell and told her about the rape. Barnes warned Mitchell that if Mitchell were to return to Jamaica, she would also be detained. Barnes also told Mitchell that "they come into the cell and take you out, sell you to other people." But Mitchell stated that she did not know whether Barnes had appeared before a judge or was subjected to judicial proceedings before being detained. Six weeks after Barnes was released from Fort Augusta, she committed suicide.

Mitchell claimed that if she were deported to Jamaica from the U.S. as Barnes had been, she feared that she too would be detained and mistreated. But when the DHS attorney asked Mitchell how the Jamaican authorities would identify her as a returning deportee, she provided no explanation.

Mitchell also testified that she had been a fashion designer in Jamaica, but she left Jamaica because there "was no work" and she "couldn't survive." According to Mitchell, if she returned to Jamaica, she would be unable to provide for her son because "[t]here's not work in Jamaica; there's no life in Jamaica."

Following the hearing, the IJ found Mitchell removable, denied her application for relief under the CAT, and ordered her removed to Jamaica. In reaching its decision, the IJ noted that Mitchell had submitted no evidence to corroborate her account of Barnes's detention and mistreatment or her claims that

4

detained deportees are systematically assaulted in Jamaica.

Mitchell timely appealed to the BIA, which affirmed the IJ's decision without opinion. Mitchell now petitions this court for review.

## II. STANDARD OF REVIEW

Where the BIA affirms and adopts the IJ's decision without opinion, as in this case, the IJ's decision becomes the final agency action subject to review by this court. Mendoza v. Att'y Gen., 327 F.3d 1283, 1284 n.1 (11th Cir. 2003); Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). "To the extent that the BIA's decision was based on a legal determination, this court's review is de novo." D-Muhumed v. U.S. Att'y Gen., 388 F.3d 814, 817 (11th Cir. 2004). We review the IJ's findings of fact under the "substantial evidence test." Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005). Under this highly deferential test, we must "affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Al Najjar, 257 F.3d at 1284 (internal quotation marks and citations omitted). "[W]e cannot find, or consider, facts not raised in the administrative forum, nor can we reweigh the evidence from scratch." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). "To reverse the IJ's decision, we must conclude that the record not only supports such a conclusion, but compels it." Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1202 (11th Cir. 2005).

## III. DISCUSSION

In her petition for review, Mitchell argues that the IJ failed to correctly interpret the CAT, her testimony must be deemed credible because the IJ failed to make a credibility determination, and she met her burden of showing that she would more likely than not be tortured if she returned to Jamaica. According to Mitchell, the IJ failed to address the "systematic torture imposed by the Jamaican government on returning deportees, especially females" and she fears that she will be tortured by the man who sold her the fraudulent birth certificate she used to enter the U.S.

The CAT is not self-executing. Reyes-Sanchez v. U.S. Att'y Gen., 369 F.3d 1239, 1240 n.1 (11th Cir. 2004). Thus, to implement Article 3 of the CAT, Congress passed the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822, codified as note to 8 U.S.C. § 1231. Section 2242(a) of the FARRA provides that the U.S. will not extradite an alien if there are "substantial grounds for believing the person" would be subjected to "torture." FARRA § 2242(a).

A series of federal regulations have been promulgated to implement the FARRA. Cadet v. Bulger, 377 F.3d 1173, 1181 (11th Cir. 2004) (citing 8 C.F.R. §§ 208.16-18). These regulations require that an applicant be granted relief under the CAT when he or she proves that it is "more likely than not" that he or she will

6

be tortured if removed to the proposed country of removal. 8 C.F.R.

§ 208.16(c)(2), (c)(4). For purposes of CAT relief, the regulations define "torture"

as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). Evidence relevant to assessing a petitioner's eligibility for

relief under the CAT includes, but is not limited to, (1) evidence of past torture

inflicted upon the applicant; (2) evidence regarding whether the applicant could

relocate within the country of removal; (3) evidence of gross, flagrant, or mass

human rights violations within the country of removal; and (4) other relevant

information regarding conditions in that country. 8 C.F.R. § 208.16(c)(3).

    As a threshold matter, the Government asserts that Mitchell seeks relief

under a document that is not binding on the U.S. because she argues in her brief

that the IJ incorrectly interpreted "Article 3 of the United Nations [C]onvention

Against Torture." The Government argues that this court should deny Mitchell's

petition to the extent she ties her challenge of the IJ's decision to Article 3 of the

CAT. Although some portions of Mitchell's brief refer only to the CAT, her brief

7

explicitly references federal regulation 8 C.F.R. § 208.18(a)(1) (which articulates the definition of torture) and explicitly states that she is entitled to relief under federal regulation 8 C.F.R. § 208.16(c) (which articulates the standards for relief under the CAT). Because Mitchell requests relief under U.S. law (namely, the federal regulations implementing the FARRA, which, in turn, implements Article 3 of the CAT), we reject the Government's argument in this regard and review the merits of the IJ's decision.

If credible, an applicant's testimony may be sufficient to sustain her burden of proof without corroboration. Forgue, 401 F.3d at 1287. "The weaker an applicant's testimony, however, the greater the need for corroborative evidence." Yang, 418 F.3d at 1201. "Conversely, an adverse credibility determination alone may be sufficient to support the denial of an asylum application." Forgue, 401 F.3d at 1287 (internal quotation marks omitted). But when an IJ "says not that [the IJ] believes the asylum seeker or [that] [the IJ] disbelieves her . . . the reviewing Court is left in the dark." Yang, 418 F.3d at 1201 (internal quotation marks omitted). Thus, an IJ must make a clean determination of credibility. Id. "If an IJ wishes to make an adverse credibility finding, he must do so explicitly." Niftaliev v. U.S. Att'y Gen., --- F.3d ----, No. 06-12708, 2007 WL 1514175, at *4 (11th Cir. May 25, 2007).

Here, although the IJ noted that Mitchell had failed to provide documentary

or corroborating evidence to support her testimony, the IJ did not clearly state that he was making an adverse credibility finding. Because the IJ did not make an explicit finding of adverse credibility, we address Mitchell's petition for review as if there had been no adverse credibility determination. See id.

Even absent an adverse credibility determination, construing the evidentiary record as a whole, we conclude that the IJ's ruling is supported by substantial evidence. As the IJ noted, Mitchell failed to present any evidence to corroborate her testimony that: (1) she would be detained and tortured by Jamaican officials as a deportee returning to Jamaica; (2) her friend Barnes had been detained and sexually assaulted by prison guards in Jamaica after being deported from the U.S.; and (3) detained deportees are regularly assaulted in Jamaica. For example, Mitchell failed to submit affidavits from Barnes's mother (from whom she claimed to have initially learned about Barnes's rape and detention) or from any of the other "people" about whom she claimed to "know first hand" had been beaten when they returned to Jamaica. And although the Country Report references incidents of abuse in Jamaican prisons, nothing in the report indicates that *deportees* are systematically detained and mistreated when they return to Jamaica. Moreover, even accepting Mitchell's testimony as true, at most, it establishes that Barnes and her mother told Mitchell that Barnes had been detained and sexually assaulted after she was deported to Jamaica. Mitchell testified that she did not

9

know whether Barnes had appeared before a judge or was subjected to judicial proceedings before being detained. And Mitchell could name no other person who had been detained and mistreated after being deported to Jamaica. Based on the evidentiary record, we conclude that Mitchell failed to establish that it is "more likely than not" that she will be tortured if she were returned to Jamaica.

## IV. CONCLUSION

For the foregoing reasons, we **DENY** Mitchell's petition.

10